State *v.* Poe.

8L 647
10L 675

THE STATE OF TENNESSEE *v.* JOHN AND CICERO POE.

1. CRIMINAL LAW.   *Continuance.   Undue excitement.*   The continuance of a State case at the first term of the court, on the grounds of too great excitement to the prejudice of the defendant, rests in the *sound* discretion of the court below, but this sound discretion does not mean an arbitrary discretion, but a sound judicial discretion, and if a clear case of· abuse of this discretion is made out, it is the imperative duty of this court to reverse and correct it.

2. SAME.   *Evidence.   Different offenses.*   It is error on trial of a defendant for one offense, to allow proof of a wholly different offense committed by the defendant, which is wholly unconnected with, and in no way elucidates the question of the guilt or innocence of the defendant.   To allow such proof will prejudge the minds of the jury against defendant.

FROM FRAKLIN.

Appeal in error from the Circuit Court of Franklin County.   J. J. WILLIAMS, J.

A. S. COLYAR & SONS and SIMMONS & CURTIS for Poe.

A. S. MARKS and ATTORNEY-GENERAL LEA for The State.

FREEMAN, J., delivered the opinion of the court.

The defendants were indicted in Franklin county for the murder of K. E. Baker, on the night of the 8th of February, 1881. They were convicted of murder in the first degree, and sentenced to be hung, from which judgment they have appealed in error to this court.

Several errors have been assigned and urged in argument for reversal of the judgment of the court below. A short statement of a few essential facts is necessary in order to present the question for decision. The record shows that on the night of the killing, there was a wedding in the neighborhood of the place, and the deceased with one Ball had started together about 12 o'clock to the marriage. They had to pass Pierce's store, in Owl Hollow, on their way—this store standing hard by the public road—as they reached it, they noticed a light in the house, and a horse and mule hitched to a plank that had been placed against the side of the house to cover a hole made for a stove pipe to pass through. They passed, says the witness, within a few steps of the horse and mule as they rode by, noticing them, and Ball swears definitely that the horse was a sorrel horse, and pretty clearly, that it had a blaze in the face. The mule was a small one, and mouse colored. The night is shown to have been

light, so that the parties could have seen the mule and horse.

The parties passed down by the side of the store to the front, some ten or twelve paces from it—called Mr. Pierce, who they supposed was in the house; at the second call the light was put out, and two men jumped out of the back window, and came round to the corner of the house, and commenced shooting, when the parties started to fly, but Baker was shot and fell from his mule, two balls having entered his back, and passed through his body—showing from their direction that he was probably bending over when shot, and had turned for flight. It is clear the parties who fired were engaged in robbing the store. A lamp made by means of a bottle of coal oil, with wick passing through the stopper, was found on the counter, and various articles of merchandise found in a sack, such as boots, shoes, tobacco, snuff, etc., says the witness. Clothing in the store seems to have been missed next day—possibly other articles. The robbers are shown to have fled along the public road, but in a direction opposite from the homes of both defendants. This course of their flight is shown by articles of goods dropped in the road in their flight, some mile or two from the store in the direction indicated.

It suffices to add, that while the killing is clearly shown by the positive proof of the party present, the defendants are not in the slightest degree identified by this witness, and their guilty connection with it is to be made out solely by circumstantial testimony. They

State *v.* Poe.

were not suspected at the time, on the contrary, an-
other party was suspected and arrested, the sole cir-
cumstance shown against him on the examination, being
that he lived hard by, and owned a blazed-faced horse,
the only one shown to have been known in the neigh-
borhood.   This party was discharged for want of proof.
The fact on which he was suspected and arrested,
however, seems to show definitely that the witness
then believed and stated, that the horse he saw that
night was a sorrel one, and had a blaze face.    This
latter fact, on the trial, he states with some hesitation.

The defendants left the neighborhood in a few days,
and were arrested in an adjoining county, some thirty
miles or more from the place of the killing, on the
13th of February, or about that time.    They were ar-
rested, however, probably on suspicion of having stolen
the mules they were found riding—both being armed.

In their saddle bags was found two coats, a vest,
pants, and about their person probably two knives,
one having an iron handle, with three "C's" on it.
These goods, that is the coat, pants and vest, are rea-
sonably identified as having been part of the stock in
the store which had been entered.

On the fact that this was the property stolen from
the store, and these parties had obtained it that night,
turned the entire case against them, for upon the other
circumstances, leaving this out, it could not be pre-
tended any conviction could stand against these de-
fendants.

With this statement of facts, we proceed to notice
the matter of law urged for reversal in argument by

counsel for defendant. Error is assigned on the refusal of the circuit judge to continue the case on affidavits filed and found in the record.

The facts to be noticed on this question are, that the grand jury returned the indictment into court on the 6th of April, 1881. On motion of the attorney-general, the case was immediately set for trial on Monday, 11th, only the 5th day from the finding of the indictment. The record shows, that owing to the intense excitement against the defendants, they had been sent from Franklin to Davidson county, to save them from apprehended violence from the people—had been returned to Franklin at commencement of the term.

On the 11th, the defendants tendered an affidavit and asked a continuance on account of the excitement against them in Franklin county, which motion was disallowed by the court. The affidavit states, that they had been arrested in Grundy county, 14th of February, 1881, on charge of robbery and murder, that they had been brought to Winchester for examination—when such a crowd assembled, and such excitement shown, that the investigation had to be postponed for several days. That in this interval, the circuit judge, on account of the intense excitement, had called on the Governor of the State for the military to guard the prisoners, which was granted, and that the sheriff, only by the greatest efforts and courage, was able to protect them from violence on the part of a large crowd assembled, until the state guard arrived; that on the second day of the examination, partly on account of the excitement and because the state guards desired

to be relieved, the defendants felt so insecure, that they waived further examination and requested to be sent to Davidson county.

They add, that efforts were then made to have them taken from the guard on their way to Nashville, and that on being returned to Winchester at first of the term, a crowd of men, numbering from fifty to seventy-five, had gathered and organized for the purpose of hanging them; and as they are informed, came within a mile of Winchester on their mission, but were persuaded to abandon their purpose by citizens who went out and met them. They say the excitement still continues, and that efforts have been made to keep it up, to prevent a fair trial.

It further appears that one of the prisoners had counsel assigned to defend him by the court, and this counsel was only assigned when the party was brought out for trial, and had no opportunity to confer with his client, or prepare for a defense.

By the act of 1875, ch. 6, sec. 5208, which made it imperative on the court to grant a continuance at first term, on affidavit that there was too great an excitement to the prejudice of the prisoners, to go safely to trial, was repealed, and it was enacted that "a continuance, because of too great excitement to the prejudice of the defendant, shall be in the sound discretion of the court."

This sound discretion, however, here referred to, does not mean an arbitrary, but a sound judicial discretion, exercised on a full and fair consideration of the facts presented before him, and that in the well known and

State *v.* Poe.

established. mode recognized by the section of the Code repealed, by affidavit of the party.   In fact, this has been the traditional and recognized mode of presenting such facts to the court for adjudication from the origin of the State to .the present time.

If there had been no qualifying mode in the act of 1875, the discretion of the circuit judge could not be held to be otherwise than as stated, our law knowing no arbitrary discretion, in a matter vitally affecting the rights of the citizen.   But the statute adds, the sound discretion, which certainly involves the idea, that it must be a properly exercised discretion, not an unsound or improperly exercised power.   If it must be sound, then the possibility of there being an unsound exercise of it is implied, and such an exercise is impliedly forbidden.   If this be correct, then the question is whether, on the facts stated, the discretion of the court was soundly exercised in this case?

While we will give much weight to the action of the inferior courts in such a case, and will not, except in a clear case, interfere with their judgment, yet, if a clear case of abuse is made out, it is the imperative duty of this court to revise and correct.

On consideration of the matter of the affidavit, and the facts we have stated, we think this a clear case for revisal of the action of the court.   If there can be shown a stronger state of facts evidencing a very high state of excitement in a community against defendants, than is here presented, we are hardly able to conceive of it.   When a community can scarcely be restrained by the power of the State from taking

the law into their own hands and wreaking vengeance on parties, and this state of things is shown to have had but little time to have abated, and is averred, and facts shown in support of it, to continue, there can scarcely be a doubt, that if any state of excitement and prejudice will serve to obtain delay, and time for it to subside, this state of facts ought to be sufficient.

When we add to this the fact, that the party who had just had counsel assigned him, and had no time to prepare under his advice for his defense, the demand is imperative, that no such haste as we see here, ought to be approved.

A party is entitled, by our bill of rights, when accused, to be heard by counsel. This means more than a simple argument before a jury. It guaranties, that in the preparation of his defense, he is entitled to the advice and assistance of counsel that his defense may be properly shaped, so that his innocence may be made to appear, if the facts shall so warrant. It would be a cruel mockery to follow the letter, and give counsel for mere argument, when, for want of that counsel's assistance, there may be no case to argue, and the argument be a useless ceremonial.

In this case, counsel assigned could have done no more than argue from the case made by the State. He had no opportunity or time to prepare a defensive case for the prisoner. Two other affidavits are found in the record, and showing that witnesses had been summoned, but not present. and subpœnas issued

for others, who had not been found, all this done from the time of finding the indictment to the day of trial; certainly this was due diligence. The case is one, as we see from the record, to be met by explanation of a chain of circumstances against the parties—but especially by uniting the point of possession of the articles supposed to have been taken from the store. If this could be done at all, it evidently would require some time and careful preparation of the means of presenting the facts. Such time has not been allowed in this case; an affidavit is found in the record, averring that the circuit judge had written a letter to be read to the public, pledging his word, that the defendants should be tried at this term. If this be true, then it was a serious mistake of his Honor to have made such a pledge. We refer to it, however, to say that such a letter could only have been written to meet a state of excitement against the defendants, as will sustain their view, that a continuance ought to have been granted.

Another error is suggested. It appears in the proof that the defendants, when arrested in Grundy county, were riding each a large black mule. They had stated to the sheriff that these mules belonged to the mother of one of them. On arriving at Cowan, where there was a telegraph office, the sheriff said to them, he had learned that a Mrs. Stone, of Bedford county, had lost two mules, and was going to telegraph to her to meet them, and see if the mules were not hers. Thereupon one of them said, it is a clear case, and no use in denying it, that they were

her mules, to which the other replied, "yes, that is so."

These facts were permitted to be proven on the trial of this case, over the objection of the defendants' counsel. In this there was error. The facts tended, and very definitely pointed to a distinct felony, the stealing of the mules. This had no connection whatever with the robbery and killing at the store, which had occurred before, in no way served to elucidate the question of guilt or innocence of the prisoners—but was to prejudice the minds of the jury by whom they were being tried. The case of *Sartin* v. *State*, 7 Lea, 679, is totally unlike this. There the facts were so connected as to be part of the same transaction, as held by the court, and therefore admissible. If the mules had corresponded with the horses seen at the store, it might have been shown that the defendants had procured them, and how it was done, by way of showing that they were the parties at the store. But no such purpose is indicated in the record. This case is clearly within the rule laid down by this court corresponding with *Kinchelow* v. *The State*, 5 Hum., 10. See cases cited in Judge Cooper's head note. It is not within any of the exceptions to the rule referred to.

We need not examine other questions. We but say, that in all cases involving the life and liberty of the citizen, it is better for the public interest, and demanded by the sense of right inherent in our nature, as well as a principle imbedded in our law, that there should be no suspicion of unfairness. Bet-

ter a few months of delay, than that an indecent haste should generate a suspicion that the accused has not had a fair and impartial trial, or a fair chance to show his innocence, if it can be done. While the courts should earnestly desire the enforcement of, and vindication of the law, by inflicting its penal sanctions, it is equally their duty to enforce all its protective guaranties in favor of the rights of the accused. It is as important that the innocent shall be vindicated as that the guilty shall be punished.

For the reasons given, the judgment must be reversed, and the case remanded for a new trial.