GEORGE M. (BUCK) JONES, Plaintiff in Error

*v.*

STATE OF TENNESSEE

(*Nashville,* December Term, 1955)

Opinion filed July 20, 1956.

Z. T. OSBORN, JR., Nashville, for plaintiff.

MILTON P. RICE, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is an appeal from a conviction for burglary in the third degree with a prison sentence of not less than three nor more than five years.

A brief statement of facts is proper although there is only one assignment of error which goes to the alleged improper admission of testimony relating to what is insisted to be an unrelated and separate offense. On the night of June 7, 1955, the smokehouse of the Colonial Food Lockers and Processing Company, Inc., on the Hillsboro Road in Nashville, was broken into and 34 hams, 2 sides of bacon and 6 sacks of smoked sausage were taken. This burglary was not discovered until early next morning when it was reported to the officers. However, on that same night, a short while after this burglary the police officers received a report about midnight that some men were on the top of Logan's Super Market on Highway No. 100, near Nashville apparently attempting to effect a burglary of those premises. Upon arrival of the officers at Logan's Super Market they observed two men on top of the building, one of whom, Bundy, was captured but the other escaped. The officers observed at

this time an automobile cruising suspiciously in the vicinity and upon stopping same they apprehended one Goodloe. In Goodloe's car were found several ham hooks, ham grease, and a rifle with ham grease on it. When the officers learned of the Colonial burglary, they questioned Goodloe in regard thereto and obtained a full confession from him to the effect that he and the defendant had on the preceding evening gotten in touch with one another and thereafter defendant had changed clothes in order to have on a dark shirt. That they had proceeded in Goodloe's car to the Colonial Lockers where defendant had broken into the smokehouse and taken the abovementioned meat. Goodloe further stated that they drove to his home and transferred the meat to the trunk of another automobile, a Chevrolet belonging to Goodloe. They then drove to the home of Bundy and after picking him up, drove to Logan's Super Market where it was intended that the defendant and Bundy would break into the building while Goodloe drove around and waited to pick them up.

When Goodloe was arrested that night while driving around Logan's Super Market he was directed to go to the Belle Meade Police Station and while so doing, he testified that he threw out of the window of the automobile a pair of pants belonging to Jones, which pants contained Jones' billfold in which was contained Jones' driver's license and other papers bearing his name. These items were made exhibits to the officers' testimony, the same having been found the next morning in the vicinity of Logan's Super Market. The finding of these trousers and the articles contained in them corroborated the confession of Goodloe.

The stolen meat was found in Goodloe's car and was returned to the owner. The officers testified that they accomplished the arrest of defendant four days later by having Goodloe arrange a meeting with defendant and by their hiding in Goodloe's car when he went to meet the defendant.

Objection was taken to the introduction of this testimony of the officers in regard to their investigation of the call about the men apparently attempting to burglarize Logan's Super Market and to the testimony of Goodloe with reference to what occurred at Logan's Super Market.

It will be noticed from the record that the officers did not identify the plaintiff in error as being one of the men present at Logan's Super Market. This identity was established by the testimony of Goodloe, the accomplice. It is insisted under this assignment that the evidence was not admissible because it threw no light on the first offense, elucidated no particular thereof, added nothing to the identification of the defendant and that proof thereof was wholly unnecessary insofar as proof of the offense of burglary of the Colonial Food Lockers was concerned.

■ We think counsel is mistaken in his interpretation of the evidence. A great many of the cases dealing with this question of other offenses are set out in *Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8. It is not necessary to review all of these cases. We think, however, that the evidence shows the plan, or scheme, or conspiracy to commit a series of burglaries on this night, although the conspiracy was nipped in the bud on the second attempted burglary. The distinction between other offenses that are not relevant and those that are relevant is made

very nicely in the two following cases. In *State v. Poe,*
76 Tenn. 647, the defendants were being tried for murder
of one man who, with a companion, surprised the
defendants while they were in the act of robbing a
country store. It appears from the testimony of the com-
panion of the deceased that there were a horse and a
mule hitched nearby. Some days later when the defend-
ants were arrested in one county they were each riding
a large black mule. It was allowed to be shown in evi-
dence that a citizen had two mules stolen in another
county and that the defendants had admitted that these
mules belonged to that person. The Court said that there
was no connection whatever with the robbery and killing
at the store, and that this proof did not serve to elucidate
the question of guilt or innocence. The Court then re-
ferred to and distinguished the case of *Sartin v. State,*
75 Tenn. 679, as being wholly unlike the Poe case, as
follows:

"There the facts were so connected as to be part of
the same transaction as held by the Court, and there-
fore admissible. If the mules had corresponded with the
horses seen at the store it might have been shown
that the defendants had procured them and how it was
done by way of showing that they were the parties at
the store. But no such purpose is indicated by the
record. This case is clearly within the rule laid down
by this Court corresponding with *Kinchelow v. State,*
24 Tenn. 9. * * *"

There is a striking similarity between the facts in the
Sartin case and the facts in the instant case. Three men
were indicted for stealing a horse which was the prop-
erty of William Morrow in Knox County. Sartin was
tried separately and convicted. The Court below per-

mitted proof over defendant's objection of the stealing of the mule belonging to Thomas Underwood, which occurred at a different time and place from the stealing of Morrow's horse. The facts are:

"That on the night of the 1st of April, 1880, Underwood's mule was stolen in Knox County. On the next night, which was Friday night, Morrow's horse and also a mule were stolen. On the Sunday following, about 2 o'clock in the morning, defendant, Chapman and Cooke stopped at the house of Carter, in Union County, some fifteen miles from Knoxville, and stayed until almost day-light, when they left together. Some four miles further on they were seen and recognized riding the two mules and horse. They were pursued and the stock recovered in the State of Kentucky. It is proven by several witnesses that the defendant, Chapman and Cooke were together in Kentucky, in possession of the stock, and they traded off the horse and mules to different persons in that State. The defendant was riding Morrow's mule, Chapman Morrow's horse, and Cooke rode Underwood's mule, at least when seen by the witnesses. But all the proof shows that it was a joint venture; that the whole scheme was carried out in pursuance of some previous plot or conspiracy for the purpose; that the stock was used and disposed of for the benefit of the three. Upon these facts we are satisfied that the evidence was properly admitted. Proof of a wholly separate and distinct offense, not calculated to throw light upon the case on trial but only calculated to prejudice the prisoner, ought not to be admitted. Such, in the opinion of the Court, was Wilcox' case [*Wilcox v. State*], 3 Heis. [110]. But the stealing of Underwood's mule, the steal-

ing of Morrow's horse and mule, the flight, the sale of the stock, the pursuit and recovery of the property and subsequent capture of the offenders, are all parts of one transaction and so intimately connected that proof of the whole is admissible, as proof in regard to one part does throw light upon the other."

*Woodruff v. State,* 164 Tenn. 530, 51 S.W.2d 843, 845, is also appropriate in this connection. The three defendants were convicted of murder committed in connection with the robbery, and in the opinion it is stated:

"Plaintiffs in error contend that it was error for the trial judge to admit in evidence against them proof of the robberies committed by them prior to that in the commission of which Mulvihill was killed.

"These separate offenses were committed in furtherance of the conspiracy which was formed on the previous day. The acquisition of the automobile by robbery furnished the plaintiffs in error with the means of transportation to and from the robbery here involved, and the robbery of the East Nashville store preceded the other by a very short interval of time."

The Court also quoted from *Mays v. State,* 145 Tenn. 118, 142, 238 S.W. 1096, as follows:

" 'It is also admissible, where the crime charged is a part of a plan or system or criminal action, to offer evidence of other crimes near to it in time and of similar character, to show the knowledge and intent of the accused, and that the crime with which he is charged was not the result of accident or inadvertence.' "

■ The rule is also reiterated that evidence that is material and relevant is never rendered incompetent

because it may tend to show guilt of another offense, even though such evidence be prejudicial to the defendant.

We must, therefore, overrule this assignment of error and affirm the judgment of the lower Court.