Billy HULL, Appellant,

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

April 11, 1977.

Certiorari Denied by Supreme Court
June 6, 1977.

Jerry Summers, Chattanooga, for appellant.

Brooks McLemore, Atty. Gen., David L. Raybin, Asst. Dist. Atty. Gen., Nashville, Gary Gerbitz, Dist. Atty. Gen., Stanley J. Lanzo and Lawrence Young, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

GALBREATH, Judge.

Billy Hull appeals his conviction by the Criminal Court of Hamilton County as an accessory before the fact of murder in the first degree of Roland Hargis, the paramour of Hull's wife. Hargis was shot and killed at approximately 12:55 A.M. on May 1, 1973, in front of the Tradewinds Night Club in Chattanooga as he and his girlfriend were leaving by Larry Parker, who, according to the State's proof, had been hired by Hull along with one Wayne Carter to carry out the assassination. Hull was sentenced to serve twenty years and one day in the State Penitentiary.

■ It is unnecessary to exhaustively detail the record to overrule the assignments of error challenging the sufficiency of the evidence. There was ample proof adduced at trial from which the jury could conclude that Hull hired an assassin to kill Hargis. The testimony of the "trigger" man implicating the appellant was overwhelmingly corroborated by other testimony, such as that the appellant possessed the weapon actually used in the slaying and that he made numerous threats against the deceased. The evidence introduced in this cause does not preponderate against the verdict of the jury. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). This assignment is overruled.

Elaborate evidence was introduced proving that the defendant also attempted, this time unsuccessfully, to have another lover of his wife's, one Jerry Mitchell, killed. This is alleged as error.

■ It is well established that evidence of other criminal acts by an accused is not admissible, unless relevant for some other purpose, to show the accused has the disposition to commit criminal acts. This rule and its narrow exceptions are enunciated in *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963):

We have many cases in which we have discussed the question of the admissibility of evidence of other crimes than that for which the accused is on trial. We need not undertake to review them. Some of the more recent ones are *Sims v. State*, 208 Tenn. 615, 348 S.W.2d 293; *Jones v. State*, 200 Tenn. 553, 292 S.W.2d 767; *Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8; *Woodruff v. State*, 164 Tenn. 530, 51 S.W.2d 843; *Mays v. State*, 145 Tenn. 118, 238 S.W. 1096.

The general principle to be collected from these, and other authorities, is that evidence of another crime or crimes than that charged in the indictment and for which defendant is on trial, is not admissible unless such evidence is relevant to prove his guilt of that crime. The test of relevancy is furnished not by law, but by logic and general experience (Thayer, Preliminary Treatise on Evidence (1898), 264–266). Morgan, Basic Problems of Evidence (1961), 183–194; Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Vand.L.Rev. 385, 403–410. It is generally agreed that evidence of other crimes by a defendant is not admissible merely to prove his disposition to commit such a crime as that on trial; but such evidence is admissible when it is relevant to prove some other material issue on trial; for instance, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of defendant on trial. *Morgan*, supra; *Harris v. State*, supra; *Woodruff v. State*, supra.

The motives for both crimes were identical, i. e., revenge for the seduction of the

defendant's wife. This establishes a connection between the efforts to bring about the deaths of the paramours.

■ Ordinarily, a threat by accused to kill or injure a person other than deceased is not admissible to show malice toward the deceased. See *Long v. State*, 202 Tenn. 373, 304 S.W.2d 492 (1957). However, as noted in 40 C.J.S. Homicide, § 206c: "Threats to do violence against a class of persons, one of whom became the victim, are admissible to show malice and state of mind. . . . (t)hus threats against peace officer or officers, or members of a particular family, are admissible where deceased was a member of the class referred to."

■ Hargis and Mitchell belonged to that, hopefully, small class of men upon whom the defendant's wife had bestowed her sexual favors. Thus, the common bond between the two men renders the evidence of threats against both of them admissible as tending to evince malice, premeditation, and that state of mind of the accused. The assassin testified that he was asked to kill both men, so in effect both intended deaths were part of the overall plan.

■ We overrule an assignment of error complaining that the jury was instructed to the effect that all witnesses are presumed to be truthful. This instruction is proper. We also overrule the contention that it was error to allow the assistant district attorney general to voir dire the jury. It has long been the practice for attorneys to participate in the examination into the competency of prospective jurors under the direction of the trial judge. See *Ray v. State*, 108 Tenn. 282, 67 S.W. 553 (1902).

The hired assassin, Larry Parker, testified that although he shot and killed the victim, he did not intend to do so. His testimony as to how he killed the victim from ambush was:

A: I just set there right then. I was undecided on what to do, since Mr. Carter wasn't there, or Wayne Carter wasn't there. And the female went to the driver's side, Mr. Hargis went to the passenger's side. And I didn't want to—I didn't want to go through with it anyway, so I figured this was the best time to just shoot close to him.

Q: Now, why would you just shoot close to him?

A: Mr. Hull told me that he worked as a merchant marine in New Orleans. I figured that would send him back to New Orleans.

Q: You figured what would send him back to New Orleans?

A: If I just missed him, come close to him and missed him—figured he'd go back.

Q: Why do you think he'd go back to New Orleans?

A: I would if somebody shot at me and missed me.

Q: All right. Now, you say—how much of his body could you see over the vehicle?

A: From here up.

Q: All right. Did you aim and shoot?

A: Yes, sir.

Q: Where did you aim at?

A: I just aimed for right here in the face.

Q: Why did you aim there?

A: So it would either go to the right— nine times out of ten the gun would have pulled to the right probably, four to six inches.

Q: All right, did you see the man fall after you shot?

A: Yes, sir.

Q: You did shoot?

A: Yes, sir.

Q: Did you shoot more than once?

A: No, sir.

Q: What happened then?

A: I heard the girl screaming, and I got up and I don't remember whether I walked or run up the hill.

■ If this testimony by the principal witness for the State was true, and/or if the jury had believed it, then the homicide could have been viewed by them as involun-

tary manslaughter, a homicide committed under such circumstances that it appears that neither death nor bodily harm was intended by the party doing the killing, and that death was accidently caused by some unlawful act on his part. *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933, (1960). The jury simply did not believe the incredible testimony of Parker insofar as it would tend to prove that he did not intend to kill Roland Hargis.

Although there was a request for him to do so, the trial judge did not instruct the jury on the elements of involuntary manslaughter. This action may well have been because of the recognition that one may not be an accessory before the fact to an accidental slaying for much the same reason that one may not be guilty of an attempt to commit involuntary manslaughter. See *Stevens v. State,* 91 Tenn. 726, 20 S.W. 423 (1892). There is just no such crime as would require proof that one intended a result that accidentally occurred.

Parker's testimony might well have justified the trial judge, upon special request, to instruct the jury on death from accident or misadventure. In the absence of a special request, the trial judge will not be held in error for failure to give such specific instructions. See *Crawford v. State,* 197 Tenn. 411, 273 S.W.2d 689 (1954).

In affirming we are constrained to hold that it was error, albeit not of a reversible nature in the overall context of this case, for the Assistant District Attorney General to ascribe to counsel for the State the prerogative "to wear the white hats" as being indicative that those who might side with the defendant are, by contrast, somewhat less than the "good guys" usually associated with that phrase. Just as the United States Supreme Court admonished in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970): "(t)he adversary system [of justice] is hardly an end in itself; it is not yet a poker game . . .", neither is it a T.V. drama nor a cowboy movie. Instead it is, or at least should be, an impartial search for truth.

We do not find that the obvious appeal for the jury to view the State's side of the controversy with more sympathy than they might accord the defendant's affected the verdict of the jury and we hold the error was harmless. T.C.A. § 27–116.

We have carefully considered all the assignments of error and affirm the judgment below.

RUSSELL and DAUGHTREY, JJ., concur.