STATE of Tennessee, Appellee,

v.

Glenn HALLOCK, Appellant.

Court of Criminal Appeals of Tennessee.

Oct. 7, 1993.

Permission to Appeal Denied by Supreme Court Feb. 28, 1994.

Count 1: Aggravated rape—fifteen years

Count 2: Rape—eight years

Count 3: Incest—three years

Count 4: Aggravated rape—fifteen years

Count 5: Aggravated sexual battery—eight years

Count four is consecutive to counts one, two, and three, and count five is consecutive to all other counts.

Hallock appeals as a matter of right and presents the following issues for our review:

1. Whether the defendant's right to a speedy trial was violated;

2. Whether the trial court erred in refusing to sever the counts for trial;

3. Whether the state properly elected the offenses upon which it sought convictions;

4. Whether the trial court erred in ruling one of the victims competent to testify; and

5. Whether the trial court erred in its instructions to the jury.

In addition to the above issues, the defendant insists that his sentence is excessive.

We have thoroughly examined the record and carefully considered all of the contentions advanced. For the reasons herein stated, the judgment is affirmed.

Comer L. Donnell, Karen G. Chaffin, Lebanon, for appellant.

Charles W. Burson, Atty. Gen. of Tennessee, and Eugene J. Honea, Asst. Atty. Gen. of Tennessee, Nashville, Tom P. Thompson, Jr., Dist. Atty. Gen., and Connie S. Robertson–Massey, Asst. Dist. Atty. Gen., Lebanon, for appellee.

## OPINION

BIRCH, Judge.

The Criminal Court of Wilson County entered judgment upon a jury verdict convicting Glenn Hallock, the defendant, of incest,[1] aggravated sexual battery,[2] rape,[3] and two counts of aggravated rape.[4]

The trial judge imposed an effective thirty-eight year sentence structured in the following way:

I

On appeal, the defendant does not contest the sufficiency of the evidence. However, in order to bring the issues raised into proper focus, an evidentiary synopsis is appropriate.

Hallock began fondling J[5] when she was six years old. From there he progressed to vaginal manipulation, then to vaginal and anal penetration. This abuse continued beyond her thirteenth year. The defendant himself described the frequency of this abuse as "regular" and claimed that he used anal

1. T.C.A. § 39–15–302.

2. T.C.A. § 39–13–504.

3. T.C.A. § 39–13–503.

4. T.C.A. § 39–13–502.

5. To preserve what is left of their privacy, we will not identify the victims beyond the extent necessary to discuss this case. The older girl, age 15 at trial, will be called "J;" the younger, age 7 at trial, will be called "K."

sex as a form of punishment for J's misbehavior.

The defendant began to victimize his younger daughter, K, when she was five, here again progressing from manipulation to penetration. Apparently, his attempts at anal penetration were unsuccessful. His abuse of K was relatively short-lived, as she was seven years old when the trial was held.

The cogency of the evidence amassed against the defendant is enhanced by his detailed pretrial confession. Thus, we see no need to describe the unlawful acts in greater detail, except as may be necessary to discuss the issues raised.

## II

For his first issue, the defendant asserts that he did not receive a speedy trial as required by the Constitutions of the United States and the State of Tennessee.

In *State v. Bishop,* the Tennessee Supreme Court adopted the four-part test outlined in *Barker v. Wingo* [6] for determining whether a defendant has been denied his constitutional right to a speedy trial. These factors are: the length of the delay, the reasons for the delay, the defendant's assertion of his right to speedy trial, and whether the defendant was prejudiced by the delay. *State v. Bishop,* 493 S.W.2d 81 (Tenn.1973). No single factor is determinative, but the most crucial inquiry is whether the delay has prejudiced the defendant. *Tillery v. State,* 565 S.W.2d 509 (Tenn.Crim.App.1978).

Hallock was indicted November 14, 1990, but the results of the mental evaluation he requested were not available until August 27, 1991. The defendant filed his speedy trial demand on January 10, 1992, and the trial began January 22, 1992—a scant twelve days after the filing of the speedy trial demand.

The record reveals no clear reason for the delay. However, it is apparent that the case was scheduled and continued at least twice because of the press of court business. We also note that at least ten months of the delay are attributable in part to the defendant's request for psychological evaluation.

Other considerations notwithstanding, the defendant has failed to demonstrate that the delay, whatever its duration, prejudiced him.

■ As stated, prejudice is the most significant of the four factors, and without a clear demonstration of actual prejudice, delay is harmless. Thus, we find no speedy trial violation in the record before us.

## III

The next issue concerns severance. The indictment was returned in five counts—in three, the unlawful acts were alleged to have been perpetrated against J, and in the two remaining counts, the victim was alleged to be K. As stated, the crimes charged are similar in nature and were committed in the same house over much of the same period of time. The defendant moved pretrial to sever the first three counts (involving J) from the remaining two (involving K) pursuant to Tenn.R.Crim.P. 14(b)(1). The trial court denied severance finding a "common scheme or plan" and to preserve judicial economy.

■ Under Tenn.R.Crim.P. 14(b)(1), a defendant has a right to severance unless the offenses are part of a common scheme or plan *and* the evidence of one would be admissible in the state's case-in-chief upon the trial of the other(s). Tenn.R.Crim.P. 14(b)(1). Traditionally, Tennessee courts have relied upon the second prong, i.e., the admissibility of one crime in the trial of another, to determine severance issues. *See State v. Smith,* 755 S.W.2d 757 (Tenn.1988); *State v. Burchfield,* 664 S.W.2d 284 (Tenn.1984); *State v. Dies,* 829 S.W.2d 706 (Tenn.Crim.App.1991). We have noticed, however, a marked tendency to disregard the two-pronged requirement and settle for the fulfillment of one. *See State v. Peacock,* 638 S.W.2d 837 (Tenn.Crim. App.1982). Actually, there are two prongs, and we must assume that each serves its own purpose. We will discuss both.

■ First, the trial court must find that there is a common scheme or plan. A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes. *Peacock,* 638 S.W.2d

---

**6.** *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

at 837. In *Tennessee Law of Evidence*, three categories of "common scheme or plan" evidence are discussed: (1) distinctive design or signature, (2) larger, continuing plan or conspiracy, and (3) same transaction. To qualify as signature crimes, the *modus operandi* must be so unique and distinctive as to be like a signature. The larger, continuing plan category encompasses groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose. The same transaction category involves crimes which occur within a single criminal episode. N. Cohen, *Tennessee Law of Evidence*, § 404.11 (2nd ed. 1990).

■ In the instant case, although the offenses are of the same character and nature, the *modus operandi* was not so distinctive as to be like a signature.

Those who misapprehend the common scheme or plan exception would venture here that Hallock, indeed, had a continuing plan or conspiracy, i.e., to sexually abuse the minor females in his household for the purpose of gratification. The fallacy inherent in this thinking is easily exposed by the following example: X is on trial for three counts of burglary, each involving a different building, a different form of entry, and a different day. His overall purpose, however, was to acquire money for college. Clearly, without more, X is entitled to severance under Rule 14(b)(1).

■ Finally, although the offenses occurred within the same house and over much of the same period of time, they are not part of the "same transaction." "Same transaction" denotes crimes which occur within a single criminal episode. Chronic sexual abuse of one's children over several years does not constitute a single criminal episode.

We conclude, therefore, that there is not a "common scheme or plan" such as to satisfy the first prong of the severance test.

We now turn to the second requirement set forth by Rule 14(b)(1), i.e., the admissibility of the evidence of one crime in the trial of the other.

■ Under the Tennessee Rules of Evidence and the preceding common law rules, evidence that the accused committed crimes independent of those for which he is on trial is generally inadmissible because such evidence lacks relevance and invites the finder of fact to infer guilt from propensity. Tenn. R.Evid. 404(b); *Mays v. State*, 145 Tenn. 118, 238 S.W. 1096 (1921).

■ There are, however, exceptions to this rule. If such other crime evidence is relevant to prove a genuinely contested issue other than propensity, then the evidence is not excluded simply because the evidence tends to prove that the defendant committed another crime. Tenn.R.Evid. 404(b); *Bunch v. State*, 605 S.W.2d 227 (Tenn.1980); *Woodruff v. State*, 164 Tenn. 530, 51 S.W.2d 843 (1932).

Tenn.R.Evid. 404(b), unlike its federal counterpart,[7] does not define the issues upon which other crime evidence may be relevant. However, case law does, and *Mays v. State, supra,* contains perhaps the best of the early definitions:

> The general rule has been well established that on prosecution for a particular crime evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same character, is irrelevant and inadmissible; but to this rule there are several exceptions. This general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime. *It frequently happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a*

---

7. Rule 404(b) of the Federal Rules of Evidence states:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

*prosecution for one evidence proving it cannot be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the res gestae.*

It has been said that evidence of other crimes committed by the accused is relevant to prove his identity. . . .

When the nature of the crime is such that guilty knowledge must be proved, evidence is admissible that at another time and place not too remote the accused committed or attempted to commit a crime similar to that charged.

Also evidence of other crimes committed by the accused similar to that charged is relevant and admissible when it shows or tend to show a particular criminal intent, which is necessary to constitute the crime charged.

Evidence is also admissible to show the motive prompting the commission of the crime. . . .

*It is also admissible, where the crime charged is a part of a plan or system of criminal action, to offer evidence of other crimes near to it in time and of similar character, to show the knowledge and intent of the accused, and that the crime with which he is charged was not the result of accident or inadvertence. This rule is often applied where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent.*

*Mays*, 238 S.W. at 1102–3 (emphasis added). It is from the *Mays* definition, we think, that the common scheme or plan exception evolved to its present stature.

 Clearly, the first emphasized portion of the *Mays* decision states the "same transaction" exception and its key term is "necessarily." This exception ensures that the jury hears the evidence of the offense in context. Evidence of *other crimes committed in the same transaction* should only be allowed when reference to the other crime is essen-

tial to the jury's understanding of the offense at bar. *McCormick on Evidence*, § 190 (4th ed. 1990).

When placed in context, the second underlined portion of the *Mays* decision does not create a "common scheme or plan" exception; rather, proof that the defendant had a common scheme or plan may be used to establish intent or rebut a defense of mistake.

However, in cases subsequent to *Mays*, common scheme or plan evidence has acquired a life of its own. Instead of serving as a means by which a relevant issue, such as identity or intent, is established, it has become a means by which propensity evidence can be offered to the triers of fact. It has become admissible simply because it was a common scheme or plan, and this evolvement has significantly eroded the force of the general rule. A brief digression is necessary to illustrate this transition.

In *Jones v. State*, the defendant and his accomplices burglarized one store and were attempting to break into another when caught by police. In the trial for the first burglary, the defendant objected to testimony by officers and his co-defendant about the second attempted burglary, since his identity was not in issue. The court, citing *Mays* and *Woodruff*,[8] held that the evidence was admissible because both burglaries were part of a common scheme or plan to commit a series of burglaries and constituted the same transaction. The court did not state for what purpose the evidence was offered. *Jones v. State*, 200 Tenn. 553, 292 S.W.2d 767 (1956).

In *Carroll v. State*, the defendant broke into the victim's apartment and raped her. He then left the apartment and entered an apartment two doors down. Police apprehended him as he attempted to rape a second person. The court admitted the testimony of the second person with the following statement:

We think the facts detailed by Mrs. Sneed were so connected with those of the crime on trial as to be part of one and the same

---

8. In *Woodruff*, evidence of a common scheme or plan to commit a series of armed robberies was admitted to establish a common intent among the co-defendants. Thus, the liability of the co-

defendants for the killing of an intervening police officer by their comrade was established. The court quotes *Mays* in context. *Woodruff v. State*, 164 Tenn. 530, 51 S.W.2d 843 (1932).

transaction, that both were so related in time and circumstances *that proof of one tended to elucidate and establish the other,* and that upon this ground the testimony of Mrs. Sneed was admissible. (cites omitted).

*Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963) (emphasis added). The court cited to *Jones, supra.* The court also stated that the testimony was admissible to rebut the defendant's claim that he thought he was breaking into his former wife's apartment to retrieve some clothes. We believe that the second justification for admitting the testimony is the only proper one. While the two incidents did occur within minutes of each other, there were no issues apparent in the opinion which would have necessitated the admission of Mrs. Sneed's testimony except to rebut the defense of mistake.[9]

Finally, in *Collard v. State,* the court stated the "other crimes" exceptions as follows:

There are numerous exceptions to this rule, for instance evidence may be introduced of other crimes or acts of misconduct to show (1) motive, (2) intent, (3) guilty knowledge, (4) identity of the defendant, (5) absence of mistake or accident, and (6) *a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other.*

*Collard v. State,* 526 S.W.2d 112, 114 (Tenn. 1975). The authority cited is *Carroll, supra.* The sixth exception cited in *Collard* has consistently appeared in subsequent cases. *See State v. Parton,* 694 S.W.2d 299 (Tenn.1985); *Burchfield, supra; Bunch, supra; State v. Morris,* 788 S.W.2d 820 (Tenn.Crim.App. 1990); *Peacock, supra.*

■■■ To set our thinking straight, the mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes. Rather, admission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue. *See Smith,* 755 S.W.2d at 757; *State*

*v. Frazier,* 683 S.W.2d 346 (Tenn.Crim.App. 1984); *State v. Lunati,* 665 S.W.2d 739 (Tenn.Crim.App.1983); *State v. Sammons,* 656 S.W.2d 862 (Tenn.Crim.App.1982). Unless expressly tied to a relevant issue, evidence of a common scheme or plan can only serve to encourage the jury to conclude that since the defendant committed the other crime, he also committed the crime charged. *State v. In the Matter of Mark McMurry,* No. 01S01–9205–CV–00059, slip. op., 1993 WL 292527 (Tenn.Sup.Ct., July 12, 1993).

■■■ In the case before us, we can discern nothing which would make the defendant's conduct toward K relevant in his trial for acts committed against J, or vice versa. Each of the victims clearly identified the defendant as the perpetrator. None of the crimes charged required proof of specific intent, and motive was not relevant. Neither mistake nor accident was raised as a defense. Thus, we find that the second prong of the severance test was not met.

The trial court's denial of severance was, in our opinion, error.

■■■ In this case, the jury heard testimony from a fifteen year old young woman and a seven year old child. Surely, the credibility of the young child was bolstered by that of her older sister. Failure to sever, under these circumstances, invited reliance upon the "propensity" notion: that is, if he did it to one, he did it to the other. However, the line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, i.e., beyond a reasonable doubt. *Delk v. State,* 590 S.W.2d 435 (Tenn.1979). The proof of Hallock's guilt is overwhelming, and we find the error here harmless beyond a reasonable doubt. *See* Tenn.R.App.P. 36(b); Tenn.R.Crim.P. 52(a).

## IV

The defendant contends that the state failed to elect the offenses upon which the convictions were sought.

■■■ In *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973), the court held that the state

---

9. The court made clear that corroboration of the victim's testimony was not necessary.

must elect the particular offenses relied upon for conviction. In cases where there are more instances of criminal behavior proven than there are counts to accommodate them, the state must match specific conduct to a specific count. Thus, the possibility of two convictions for the same conduct is eliminated. Election requires the jury to be unanimous in the conduct upon which a particular conviction is based.

In the matter before us, the state did, at the defendant's urging, elect offenses. The defendant contends that the election was incomplete.

 In electing, the state is not required to identify the particular date of the elected offense. As stated in the recent case of *State v. Shelton:*

> The time of an offense is often immaterial in the bringing of an indictment.... Moreover, such a requirement [identification of the particular date] would make impossible the prosecution of criminal acts committed against young children.... However, a particular offense can often be identified without a date.

*State v. Shelton,* 851 S.W.2d 134, 137 (Tenn. 1993).

 In cases involving sexual abuse of children, the victim may identify a particular incident by connecting it to the surroundings or circumstances of its occurrence. The incident may also be identified by reference to a memorable event in the victim's life, such as the beginning of school, a birthday, or other meaningful events. *Id.*

 As stated, the record establishes that the state did offer the required election. In this offer, the state connected each specific count in the indictment with testimony of a specific event which occurred at a specific time in the children's lives. These specifications, we believe, furnished an adequate basis for the verdict to be unanimous on each one of the counts. This issue is without merit.

## V

The defendant contends that the trial court erred in finding K competent to testify and in admitting her testimony. This issue is controlled by Tenn.R.Evid. 601 and 603. Tenn. R.Evid. 601 provides:

> Every person is presumed competent to be a witness except as otherwise provided in these rules or by statute.

Tenn.R.Evid. 603 provides:

> Before testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so.

The record establishes that the trial judge complied with Rule 603.

 Traditionally, the determination of whether a child under fourteen was competent to testify rested within the sound discretion of the trial court, and such decisions were reviewed only for gross abuse. *See State v. Fears,* 659 S.W.2d 370 (Tenn. Crim.App.1983). Although the Rules of Evidence have eliminated the common law presumptions regarding the competency of child witnesses, we conclude that the decision of whether Rule 603 is satisfied remains discretionary with the trial court. *See State v. Francis Lucindy Ballard,* 855 S.W.2d 557 (Tenn.Sup.Ct.1993). As we have not found any indication of an abuse of discretion, this issue is without merit.

## VI

The defendant suggests that the trial court erred in two instances regarding the jury instructions:

1. By refusing to instruct the jury on the offense of sexual battery [10] and statutory rape,[11] and

2. By instructing the jury as follows:

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt

---

10. T.C.A. § 39–13–505.

11. T.C.A. § 39–13–506.

does not mean a captious, possible or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but *moral certainty* is required, and this certainty is required as to every proposition of proof requisite to constitute the offense. (emphasis added).

Regarding the defendant's assertion that the trial court erred in refusing to instruct the jury on the offense of sexual battery and statutory rape, a trial court is not required to charge a jury on a lesser included offense unless there is evidence in the record to support a conviction for that lesser offense. *State v. Dulsworth*, 781 S.W.2d 277 (Tenn.Crim.App.1989). There was no evidence to support such a jury charge, and we find no merit to this issue.

It is the inclusion of the emphasized phrase "moral certainty" in the above instruction which the defendant claims is error.

The defendant cites to *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in support of his contention. We find *Cage* distinguishable. In *Cage*, the Court stated:

> [t]he charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id.*, at 41, 111 S.Ct. at 329–30. Clearly in *Cage*, the error occurred in the trial court's statement regarding the degree of doubt necessary for acquittal. In the instant case, the trial court correctly defined "reasonable doubt." We do not interpret *Cage* as abandoning the long tradition of using "moral certainty" in jury instructions when it is used to define the level of certainty which jurors must possess to find a defendant guilty. See *Miles v. United States*, 103 U.S. 304, 26 L.Ed. 481 (1881); *Wilson v. United States*, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914).

Use of the phrase "moral certainty" in Tennessee jury instructions dates back to *Owen v. State*, 89 Tenn. 704, 16 S.W. 115 (1891) and its use has been perpetuated since that time. See T.P.I.—Crim. 2.03 (3rd ed.). There is no error here.

## VII

The defendant contests his sentence. He claims that the facts introduced at the sentencing hearing do not justify consecutive sentencing.

As stated, the defendant's effective sentence is thirty-eight years. Were the terms concurrent, his effective sentence would be fifteen years.

When, as here, an accused challenges the length, range, or the manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40–35–401(d).

In conducting a *de novo* review of a sentence, this court must consider:

1. the evidence, if any, received at the trial and the sentencing hearing;

2. the presentence report;

3. the principles of sentencing and arguments as to sentencing alternatives;

4. the nature and characteristics of the criminal conduct involved;

5. any statutory mitigating or enhancement factors;

6. any statement · that the defendant made on his own behalf; and

7. the potential or lack of potential for rehabilitation or treatment.

T.C.A. §§ 40–35–103 and –210 (1990). *See State v. Smith,* 735 S.W.2d 859 (Tenn.Crim. App.1987).

The trial court ordered the sentences to be served consecutively, grounding this decision on its finding that Hallock was "dangerously mentally abnormal person" (T.C.A. § 40–35–115(b)(3)) as well as a multiple sex abuser of minors (T.C.A. § 40–35–115(b)(5)).

The trial court stated:

> The testimony from the psychiatrist, I felt, establishes this defendant is a dangerous, he is a dangerous mentally abnormal defendant. Abnormal because he loves little children like he says he does, and how he described that they excited him, like his daughter in the bathroom, when he testified.... [H]e has a pattern of repetitive or compulsive behavior with heedless indifference.... And I think the defendant, of course, is convicted of two or more statutory offenses involving sexual abuse to a minor....

> Of course, I've got to look at society's rights, I've got to protect society, especially where young children are being molested and raped.... And I think the purpose of our law, when it says to run them consecutive you've got to look to these factors up here that I just talked about, you consider that, it's not an isolated incident.

As indicated, to support a finding that a defendant is a "dangerous mentally abnormal person," the statute requires a competent psychiatrist to conclude and declare that the statute applies. The only expert who testified as to the defendant's mental state was a clinical psychologist. Testifying for the defendant, the expert did not state that the defendant's conduct was that of a "dangerous mentally abnormal person." Thus, the record reflects that we have neither a competent psychiatrist nor a declaration of dangerous mentally abnormal status as the statute requires. Therefore, the "dangerous mentally abnormal person" factor would not permit consecutive sentencing of this defendant. Nevertheless, given the circumstances surrounding the defendant's multiple sex abuse of minors, the consecutive sentencing decision is fully justified under

T.C.A. § 40–35–115(b)(5). Thus, we approve the sentence imposed by the trial court and affirm the trial court's judgment in all other things.

TIPTON and WHITE, JJ., concur.