IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville September 16, 2014

**STATE OF TENNESSEE v. SHAYNE THOMAS HUDSON**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2806      Cheryl Blackburn, Judge**

**No. M2013-02714-CCA-R3-CD - Filed November 21, 2014**

Appellant, Shayne Thomas Hudson, was convicted by a Davidson County jury of theft of property valued at $1,000 or more but less than $10,000, a Class D felony, and was sentenced to three years, suspended to supervised probation. He appeals his conviction on two grounds: (1) whether the trial court erred in admitting evidence of his prior conviction for theft; and (2) sufficiency of the convicting evidence. Following our careful review of the parties' briefs, the applicable legal authority, and the record as a whole, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;
Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Dawn Deaner, District Public Defender; and Emma Rae Tennent (on appeal), Katherine Dix (at trial), and Mary Kathryn Harcombe (at trial), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Shayne Thomas Hudson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Senior Counsel; Victor S. Johnson III, District Attorney General; Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

This case involves the alleged theft of a Canon camera lens from a Walmart store in Hermitage, Tennessee.

At trial, the State's first witness was Brian Hicks, an asset protection manager with Walmart Stores, Incorporated. On May 25, 2012, appellant was arrested due to his involvement in a "site to store" purchase of a Canon camera lens worth $3,600. Mr. Hicks reviewed a document detailing the purchase, which indicated that the item was ordered and paid for on May 14 and shipped to the Walmart store in Hermitage on May 15, 2012. To pick up a "site to store" order, the purchaser must show some form of identification, which appellant did. He picked up the lens on May 25 at 5:01 p.m. and returned it at 5:43 p.m. on the same day. Mr. Hicks explained the refund policy:

> It depends on what type of item and the value of that item. For high priced items such as iPads, in this case the camera lens, once it is refunded a member from claims is notified. Claims is the department that actually receives the item, processes it, sends it to our return center, which eventually will give us credit for those items. An associate from claims is called to the service desk to secure the item. They will then take that item back to the claims cage, which is a secure locked cage in which the high priced value items are secured until they can be processed and then placed on the truck and taken back to the claims center.

Mr. Hicks was notified that appellant had returned the lens approximately one hour after the transaction. The associate who had processed the return notified him because he was concerned that the contents of the box did not match the description. Mr. Hicks retrieved the lens from the claims cage and looked at it. He observed that "it was a rather nice looking Canon lens. However, the markings on it were not consistent with the model and the type." He compared the serial number on the lens to that on the box, and they were not the same. Moreover, the lens that was in the box was not a lens carried by Walmart, either online or in the store. Mr. Hicks stated that without his prior knowledge of cameras, it would have been very difficult to distinguish one lens from the other.

Mr. Hicks produced video surveillance footage from the store that showed appellant picking up his "site to store" order at the customer service desk. After obtaining the camera lens, appellant left the store at 5:22 p.m. Another camera captured appellant leaving the store and walking to his vehicle. His vehicle never left the parking lot. He re-entered the store at 5:32 p.m. Appellant entered the customer service area's camera view at 5:36 p.m., and the refund receipt was printed at 5:43:39 p.m. The tape showed the associate taping up the box containing the camera lens. Mr. Hicks explained that thereafter, the associate had to find a manager to retrieve cash from a separate location because of the amount of the refund. Because it is a lengthy process, the end of appellant's transaction is not recorded on video. Mr. Hicks testified that when he opened the box, he found a Canon camera lens that Walmart

did not carry, which was valued at $265. Mr. Hicks subsequently filed a report with law enforcement.

Detective Ronald Kumrow with the Metropolitan Nashville Police Department ("Metro") testified next. He investigated the theft of the camera lens from Walmart, and in that capacity, he first telephoned appellant. He made arrangements for appellant to appear at the police station on June 15, 2012, for an interview. Detective Kumrow asked appellant about the camera lens, and he initially stated that it was in his car. However, appellant then made several excuses to avoid retrieving the lens. Finally, Detective Kumrow placed appellant under arrest. At the close of this testimony, the State rested its case-in-chief.

Appellant testified on his own behalf. He stated that he did not take the camera lens and that he placed the same lens back into the box that came from the box. He explained that he ordered the camera lens from walmart.com because he had an interest in film-making and was trying to learn about different lenses. Upon receiving the lens, appellant attempted to attach it to his camera while he was sitting in his car in the parking lot. However, he discovered that the Canon lens was not compatible with his Nikon camera. He placed the lens back in the box and went back into the store with the intention of returning it.[1] Appellant recalled that the associate "had thoroughly inspected the item and said that that was the correct lens." He had no indication that there was a problem with the return.

Appellant said that when he placed the order, he used his correct name, address, telephone number, and e-mail address. Subsequently, he received a telephone call from a law enforcement officer. Appellant maintained that he agreed with the "picture" Detective Kumrow painted of the events because he wanted to go to the police station and see the lens that he was accused of switching.

On cross-examination, appellant reiterated that the lens that he ordered was contained in the box he picked up from Walmart. He denied having prior knowledge that the lens would be incompatible with his camera. Appellant confirmed that he and two others operated a start-up video production company and that he was prominently featured on the company's website. He further stated that Detective Kumrow was lying to him on the telephone, so he "was playing the game back" by agreeing that he switched the lens. He acknowledged that even when he spoke with the detective in person, he did not simply explain that the lens did not fit his camera so he returned it.

---

[1] We note that the lens that was contained in the box upon its return to Walmart was entered into evidence at trial. However, the lens that was allegedly contained in the box upon purchase from Walmart was apparently not recovered.

Upon further examination, the State inquired[2] into the circumstances surrounding appellant's 2007 guilty-pleaded conviction for theft, which involved his returning an empty iPod box to a Target store in Mount Juliet, Tennessee. Appellant then rested his case-in-chief.

Upon this evidence, the jury found appellant guilty as charged. The trial court sentenced appellant to three years suspended to supervised probation. This appeal follows.

## II. Analysis

Appellant challenges the admissibility of his 2007 conviction for impeachment purposes and the sufficiency of the convicting evidence.

### A. Admissibility of Conviction

### 1. Facts from Jury-Out Hearing

The State filed a notice of intent to use appellant's prior conviction for a 2007 misdemeanor theft as impeachment evidence pursuant to Rules 608 and 609 of the Tennessee Rules of Evidence.[3] Prior to the beginning of trial, the court conducted a hearing to determine the admissibility of the conviction under Rules 608 and 404(b). The State maintained that it would not seek to introduce the conviction during its case-in-chief but argued that the conviction could be relevant, depending upon appellant's testimony, to "rebut mistake, for instance, or lack of intent or whatever it is he may testify in his defense." Appellant argued that because he was convicted of theft, the facts were too similar to the instant case. The trial court ruled that evidence of the conviction was "too close to bring . . . out," but that depending on appellant's testimony, "it may become relevant."

Accordingly, appellant testified on his own behalf at trial, and the State requested a jury-out hearing before it cross-examined appellant with regard to this conviction. During the hearing, appellant testified that he returned an iPod to a Target store for a friend but that he did not purchase it himself. He said that he was unaware at the time that the box was

---

[2] The evidentiary hearings, arguments of counsel, and rulings of the trial court pertinent to introduction of appellant's prior conviction are summarized below in conjunction with analysis of the issue.

[3] The State cited Rules 308 and 309 in its notice; however, it is clear from the context that the numbers were typographical errors and that the State intended to rely on Rules 608 and 609.

empty. He did not receive cash in exchange for the refund; the amount was credited back to his friend's Visa card.

Appellant further testified during the hearing that he pleaded guilty to the charge because his attorney advised him that if he did not plead guilty, he would have to pay the attorney an additional $500. On the other hand, the charge was a misdemeanor that involved less than $250. Appellant said that his attorney told him, "'It's up to you, you can pay another $500.'" On this advice, appellant stated that he "went ahead and took [the plea] because it was – never knowing that that could make [him] look another way in another case."

The trial court ruled that the conviction fell within the ten-year time frame mandated by Tennessee Rule of Evidence 608, that the State had given the requisite notice, and that it was probative of appellant's truthfulness or untruthfulness. The court further found that the probative value of the evidence "far" outweighed the danger of unfair prejudice in that the conviction was probative of appellant's experience with law enforcement officers in light of his testimony that he had no prior involvement with the criminal justice system. However, the trial court opined that the issue was "very close." The State did not argue the applicability of Rule 609, and the trial court made no findings in this regard in its ruling.

With regard to Rule 404(b), the trial court found the evidence relevant to the material issue of lack of mistake or accident. In addition, the trial court held that the State could ask, "[O]n such and such a date[,] did you go in and take the iPod back with an empty box[?]"

### 2. Applicability of Tennessee Rule of Evidence 404(b)

The trial court ruled that evidence of appellant's prior conviction was admissible under Rule 404(b) of the Tennessee Rules of Evidence. "Although appellate courts have repeatedly emphasized a restrictive approach to Rule 404(b), the decision of a trial court to admit or exclude evidence will not be overturned on appeal absent an abuse of discretion, provided that the court adhered to the Rule's procedure" as outlined below. *State v. Jones*, — S.W.3d —, 2014 WL 4748118, at *23 (Tenn. 2014) (citing *State v. Kiser*, 284 S.W.3d 227, 288 (Tenn. 2009)).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." For such evidence to be admitted, the trial court must follow the requisite procedure:

(1)  The court upon request must hold a hearing outside the jury's presence.

(2)	The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record, the material issue, the ruling, and the reasons for admitting the evidence;

(3)	The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4)	The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).  Because the trial court complied with the procedure dictated by Rule 404(b), our standard of review is abuse of discretion.

Generally, Rule 404(b) is an exclusionary rule.  *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999).  "The general rule is that evidence of a defendant's prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and 'invites the finder of fact to infer guilt from propensity.'" *State v. Daniel H. Jones*, No. E2010-00016-CCA-R3-CD, 2011 WL 2347711, *3 (Tenn. Crim. App. Sept. 11, 2011) (quoting *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993)).  "The rationale underlying Rule 404(b)'s exclusion of evidence of a defendant's prior bad acts is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence." *Id.* (citing *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994)).  The risk is increased when the defendant's prior bad acts are similar to the crime for which he is on trial. *Id.* (citation omitted).

Following the jury-out hearing, the trial court concluded that appellant's conviction for theft was admissible because it was relevant to the material issue of lack of mistake or accident.  *See* Tenn. R. Evid. 404(b), *Adv. Comm. Cmt.*  However, at the jury-out hearing, trial counsel stated, "For the record[,] we have not argued mistake.  He never on direct claimed any mistake."  The trial court answered, "You may not have argued that, but he certainly did in his statement to the police."  Counsel responded, "Which we didn't put in."

From this colloquy, it is clear that appellant did not interject mistake or accident as an issue.  Rather, any reference to mistake was introduced by the *State* during its case-in-chief.  Contrary to appellant's statement to police, at trial, he testified and offered an explanation for his statements to police and stated that he had not, in fact, switched the

camera lens. Therefore, appellant did not interject "mistake" as an issue at trial, and accordingly, "lack of mistake" could not have been a material issue.

Our supreme court has held, "because the appellant did not assert accident or mistake as a defense, there was nothing to rebut." *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996); *see also State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005) (noting that despite the exclusionary nature of Rule 404(b), "evidence of a criminal defendant's character may become admissible when it logically tends to . . . rebut a claim of mistake or accident *if asserted as a defense*"). As in *McCary*, "we reach the inescapable conclusion that the other crime evidence was inadmissible on any material issue in this case. Its character, therefore, was that of 'propensity evidence' – a result condemned by [*State v.*] *Parton*[, 694 S.W.2d 299 (Tenn. 1985)] and Rule 404(b)." *McCary*, 922 S.W.2d at 514. The trial court relied upon an inapplicable exception to allow admission of appellant's prior conviction under Rule 404(b) of the Tennessee Rules of Evidence. In addition, while the trial court instructed the jury to consider the theft conviction only for the purpose of its effect on appellant's credibility, the trial court failed to give a limiting instruction as to how the jury should consider the circumstances surrounding the prior theft. *See* T.P.I.-Crim. 42.10 (18th ed. 2014).

Moreover, we conclude that the probative value of introduction of a crime so similar in nature to the offense in this case was outweighed by the danger of unfair prejudice. "The term "unfair prejudice" has been defined as '[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Jones*, 2014 WL 4748118 at *24 (quoting *State v. DuBose*, 953 S.W.2d 649, 654 (Tenn. 1997)). When the other crime is similar to the charged offense in the pending case, the danger of unfair prejudice is especially prevalent, increasing the likelihood that '[the] jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense.'" *Id.* (quoting *State v. Mallard*, 40 S.W.3d 473, 488 (Tenn. 2001)). Appellant's prior conviction was not admissible pursuant to Tennessee Rule of Evidence 404(b).

3. Applicability of Tennessee Rule of Evidence 608

Rule 608 of the Tennessee Rules of Evidence allows that, provided certain conditions are met,

[s]pecific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, *other than convictions of crime as provided in Rule 609*, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness

concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified.

(Emphasis added). We note that the language of Rule 608(b) specifically *excludes* criminal convictions, stating that the admissibility of such convictions is governed by Rule 609. While Rule 608(b) allows inquiry into specific instances of prior *conduct* that may be a criminal offense, "acts that were a criminal offense and were the object of a criminal *conviction* must be introduced pursuant to Rule 609 rather than Rule 608. Rule 609 covers criminal convictions for impeachment." N. Cohen, S. Sheppeard, & D. Paine, Tennessee Law of Evidence § 6.08 [4] (6th ed. 2011) (emphasis added). Appellant's prior conviction was not admissible pursuant to Rule 608.

In sum, the circumstances surrounding appellant's prior conviction for theft and the conviction itself were inadmissible under Tennessee Rules of Evidence 404(b) and 608. We must now consider the State's argument that the error is harmless.

> Because the evidentiary error here is neither structural nor constitutional, our harmless error analysis is governed by Tennessee Rule of Appellate Procedure 36(b), which provides that [a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. This standard recognizes that . . . a person convicted of a crime as a result of an essentially fair trial is not entitled to have his or her conviction reversed based on errors that, more probably than not, did not affect the verdict or judgment. Our harmless error analysis does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct. To the contrary, the crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision-making.

*Jones*, 2014 WL 4748118, at *30 (internal quotations and citations omitted). Because appellant's credibility was crucial in this case, we cannot conclude that this error was harmless. Therefore, we reverse appellant's conviction in this case.

### 4. Applicability of Rule 609

Although the State's notice of prior convictions addressed Rule 609 of the Tennessee Rules of Evidence, the trial court did not engage in an analysis of Rule 609 in ruling on the admissibility of appellant's prior conviction.

As applicable in this case, Rule 609 permits, under certain conditions, introduction of an accused's misdemeanor conviction for impeachment purposes if the offense involved dishonesty. Tenn. R. Evid. 609(a)(2). The trial court must first make a determination of whether the probative value of prior conviction outweighs its prejudicial effect. *Id.* 609(a)(3). In doing so, the court "should assess the similarity between the crime on trial and the crime underlying the impeaching conviction. As a general rule, 'the unfairly prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried.'" Cohen, *et al.*, § 609.10(c). Admission of a prior conviction that is closely related to the charged offense requires heightened scrutiny. *Long v. State*, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). Moreover, "[p]ursuant to Rule 609, evidence of a witness's prior conviction must be 'limited to the fact of a former conviction and of what crime, with the object only of affecting the credibility of the witness . . . .'" *State v. Eddie Elveton Robinson Gaston*, No. E2004-01450-CCA-R3-CD, 2006 WL 74149, at *25 (Tenn. Crim. App. Jan. 13, 2006) (quoting *State v. Taylor*, 993 S.W.2d 33, 34 (Tenn. 1999)).

Our ruling in this case does not preclude admissibility of appellant's prior misdemeanor theft conviction pursuant to Rule 609(a)(3) of the Tennessee Rules of Evidence. Upon remand, the trial court may hold a hearing pursuant to Rule 609 to determine the admissibility of this prior conviction.

## B. Sufficiency of the Evidence

Appellant also challenges the sufficiency of the convicting evidence. Despite our conclusion that appellant's conviction must be reversed, we will address the sufficiency of the evidence in the event of further appellate review. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857

(Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As charged in this case, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Appellant was charged with a Class D felony theft, which is theft of property valued at $1,000 or more but less than $10,000. *Id.* § 39-14-105(a)(3).

Viewing the evidence in the light most favorable to the State, appellant ordered a Canon lens valued at $3,600 from walmart.com and picked up his order at the site-to-store counter. Upon retrieving his purchase, appellant exited the store, walked to his vehicle, and remained inside his vehicle for several minutes, all of which was captured on videotape. He subsequently re-entered the store to return the camera lens, stating that he had discovered that the Canon lens was not compatible with his Nikon camera. After the return transaction had been completed and appellant left the premises, a Walmart associate notified Mr. Hicks, an asset protection manager, of an apparent discrepancy between the description of the lens on the box and the lens that was contained in the box. Mr. Hicks determined that the lens contained within the box was not the $3,600 Canon lens but was instead a $265 Canon lens that was not carried in Walmart stores or on walmart.com. Based upon the evidence, the State established that appellant exercised control over property valued at $1,000 or more but less than $10,000. *Id.* § 39-14-105(a)(3). He subsequently returned a lens of significantly less value in its place. The jury, as the trier of fact, could have inferred from the circumstances of the case that appellant exchanged the lenses in his vehicle with the intent of depriving Walmart of the property.

Appellant's specific challenge to the sufficiency of the convicting evidence was a "void in the proof concerning the whereabouts and movements of the camera lens from the

-10-

time [appellant] returned it to the time [Mr.] Hicks inspected it in the claims cage almost one hour later." Mr. Hicks testified that the associate who took possession of the camera lens placed it in the claims cage, which is a locked cage where expensive merchandise is stored prior to its being returned to the manufacturer. Mr. Hicks was thoroughly cross-examined, and the jury assessed the testimony and evidence at trial. The jury was apparently convinced that the business practice was not suspect and did not result in the lens being compromised. We will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379. From the evidence presented, a rational trier of fact could have found appellant guilty of theft of property. He is not entitled to relief on this claim.

## CONCLUSION

For the aforementioned reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ROGER A. PAGE, JUDGE

-11-