IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. DAVID RYAN SWANSON

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 213832-213843; 216727-216740 Douglas A. Meyer, Judge**

_____

**No. E1998-00041-CCA-R3-CD - Decided May 16, 2000**

_____

The defendant, David Ryan Swanson, pled guilty to 19 counts of burglary, one count of theft of property over $500.00, and three counts of theft of property under $500.00. The trial court sentenced the defendant to two years on each burglary charge, two years on the charge of theft of property over $500.00, and 11 months and 29 days on each charge of theft of property under $500.00. Four of the sentences were ordered to be served consecutively for an effective sentence of eight years. On appeal, the defendant argues that the trial court erred in its determination of enhancement factors, erred in its imposition of consecutive sentences, and improperly denied an alternative sentence. We affirm the defendant's convictions, but modify the sentences for burglary and theft of property over $500.00 from two years to one year and order that six of the sentences be served consecutively for an effective sentence of six years.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed as Modified**

WADE, P.J., delivered the opinion of the court, in which SMITH and WITT, JJ., joined.

Johnny D. Houston, Jr., (on appeal) and Laurie J. Hadwyn (at trial), Chattanooga, Tennessee, for the appellant, David Ryan Swanson.

Paul G. Summers, Attorney General & Reporter, Michael J. Fahey II, Assistant Attorney General, H. C. Bright, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

As part of a plea agreement, the defendant, David Ryan Swanson, pled guilty to nineteen counts of burglary, one count of theft of property over $500.00, and three counts of theft of property under $500.00. The state and the defense agreed that the defendant should be sentenced as a Range I offender to no more than an aggregate of eight years. All other sentencing issues were to be resolved by the trial court. At the conclusion of a hearing, the trial court sentenced the defendant to two years on each burglary charge, two years on the charge of theft of property over $500.00, and 11 months and 29 days on each charge for theft of property under $500.00. The trial court ordered that four of the two-year sentences be served consecutively to one another and concurrently to all other sentences, thereby imposing an effective sentence of eight years, the

maximum possible.

_____

In this appeal of right, the defendant contends that the trial court committed errors in its determination of enhancement factors, erred in its imposition of consecutive sentences, and improperly denied an alternative sentence under the Community Corrections Act.

The sentences for burglary and theft of property over $500.00 are modified from two years to one year. The misdemeanor theft sentences of 11 months and 29 days are affirmed. The defendant shall serve six of the sentences for burglary consecutively, with the remainder of his sentences to be served concurrently. The effective sentence is, therefore, modified from eight to six years.

During the time period between January 1994 and June 1996, 19 women reported that their purses had been stolen from vehicles parked in recreational areas near Signal Mountain. Law enforcement officials received information that a red or orange truck having wooden panels was used by the perpetrator. While on patrol near the area of the thefts, Officer Greg Hill of the Signal Mountain Police Department received information that a man driving the suspected truck had just stolen a purse from a parked car. Officer Hill then saw the truck and began pursuit. When he activated his emergency lights, the driver refused to stop. Officer Hill placed a call to the fire department and the officers were able to stop the truck by blocking its path with a fire engine. The defendant was the driver of the truck. Officer Hill, a K-9 officer, approached the truck with his dog. The dog alerted. A search yielded two purses which had been stolen in the area, one of which contained narcotics.

After his arrest, the defendant admitted to stealing the 19 purses. He explained that he had been diagnosed as a "sex addict" and that he took the purses in order to satisfy his sexual desires and fantasies. The defendant informed the officers that he would "masturbate to these [stolen] purses." He revealed that he had begun the practice of looking into girls' purses while in high school. With the defendant's cooperation, officers located 31 stolen purses in the defendant's possession, only 19 of which had been reported as missing. In addition to the purses, the officers found a large box containing items such as drivers' licenses, diaries, and photographs. The defendant explained that he did not keep all of the purses that he had stolen because he lost sexual interest in them, but decided to keep the contents of the purses because he believed he had a "personal relationship" with the female victims and their families. He said that he used the cash from the purses and kept the remainder of the contents. Officers were able to identify a total of 65 victims from the materials the defendant kept in his possession.

At the sentencing hearing, it was established that the defendant, age 30, had been married since 1994. The couple had no children together. The defendant's first marriage, which ended in divorce in 1993, produced one son, age three at the time of the defendant's arrest. The child resides with his mother and the defendant regularly provides support of $50.00 per week. After completing high school, the defendant enrolled in courses at Chattanooga State Community College where he has studied mathematics and maintained a high grade point average. He has a good employment record, including work as a teachers' aide at the community college, as a substitute

teacher for the Hamilton County School System in 1995 and 1996, and as a woodworker at a cabinet shop. The defendant has a variety of health problems, which include depression, anxiety, obesity, back pain, cluster headaches, and cardiomegaly (enlarged heart). He has one prior offense, a misdemeanor assault conviction in 1993.

The defendant claimed that he had a "sex and love addiction." He explained that he "created these fantasy relationships that weren't real" and that his low self-esteem causes him to seek out unhealthy relationships. He contended that he had been making significant progress with a 12-step program designed to combat his problems. He apologized to his family and the victims of the crimes. The defendant's wife and father both testified that they were unaware of his "sexual addiction" at any time before his arrest.

Several women whose purses had been stolen by the defendant also testified at the sentencing hearing. None, however, were victims of the 19 burglaries or the four thefts to which the defendant pled guilty. Each of the women expressed the feeling that she had been violated by the defendant. They were particularly concerned about the defendant obtaining their personal information, which included their addresses, social security numbers, and photographs. The women also testified that their children were afraid that the defendant might attempt to break into their homes. At least one of the purses the defendant had stolen contained keys to the victim's home. Each of the women testified to the inconveniences of cancelling credit cards, dealing with stolen checks, and replacing drivers' licenses and social security cards. They also testified as to the value of their stolen property and the break-in damage to their vehicles. The women testified that all of their personal belongings had been returned to them, with the exception of any cash.

The only information relating to the actual victims of the crimes for which the defendant was convicted is contained in two victim impact statements. In the section marked "Victim's Property Loss," Mary Seay, one of the burglary victims, wrote the following: "Van side window smashed–$150.00, I think. Purse and contents stolen. A year later, I got everything back except the money–about $20.00. Locks on doors to house changed–$60.00. My husband did this himself–cost him his time, inconvenience." Jennifer Scoggins, a burglary and misdemeanor theft victim, reported that her stolen purse had an estimated value of $40.00. The pre-sentence report indicates that the investigating officer mailed victim impact statement forms to six additional victims, but none of these forms were returned to the officer.

I

Initially, the defendant argues that the trial court erred in its application of statutory enhancement factors. The state argues that the enhancement factors were properly applied.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn.

-3-

1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Because the trial court committed error in sentencing the defendant, our review of the defendant's sentence is de novo, without an accompanying presumption of correctness.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for felony convictions committed before July 1, 1995, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1990) (amended July 1, 1995, to provide that the presumptive sentence for Class A felony as the midpoint in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id. The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

For a Range I offender, the applicable range for the offense of burglary of an automobile, a Class E felony, is from one to two years. Similarly, the range for the Class E felony offense of theft of property over $500.00 is from one to two years. The maximum sentence for misdemeanor theft of property is 11 months and 29 days. At the conclusion of the sentencing hearing, the trial court set two-year sentences for each burglary conviction and for the single felony theft conviction. A sentence of 11 months and 29 days was imposed for each of the three misdemeanor theft convictions. Because four of the two-year sentences were ordered to be served consecutively, the effective sentence was eight years.

The trial court found the following enhancement factors applicable, but did not specify whether the factors applied to the burglaries or to the thefts:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(3) The offense involved more than one (1) victim;

-4-

(6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; and

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement.

Tenn. Code Ann. § 40-35-114.

Trial courts must make separate findings as to which enhancement factors apply to which convictions. State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). In this case, it appears that the trial court may have intended to apply each of the cited enhancement factors to all of the defendant's convictions.

The trial court found the following mitigating factors:

(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury; and

(10) The defendant assisted the authorities in locating or recovering any property or person involved in the crime.

Tenn. Code Ann. § 40-35-113. The trial court complimented the defendant for helping the police "in clearing all the cases that he had committed. And also, I will give him credit for continuing to seek help, even though his own counselor says that he was only going through the motions."

Because the punishment for the offense of theft is enhanced based upon the amount taken by the defendant, Tenn. Code Ann. § 40-35-114(6) may not be applied to any of the theft offenses. State v. Grissom, 956 S.W.2d 514 (Tenn. Crim. App. 1997). Any enhancement of the theft convictions based upon that factor was erroneous. Moreover, none of the 19 victims of the crimes for which the defendant was convicted were called upon to testify as to the value of the property which was lost or damaged. The only information relating to the victims of the offenses is contained in the victim impact statements of Mary Seay and Jennifer Scoggins. Jennifer Scoggins reported $40.00 as her amount of loss and Mary Seay wrote that her stolen purse contained approximately $20.00 in cash, that her van side window cost approximately $150.00, and that replacement locks for her home totaled $60.00. Thus, the aggregate amount of damage sustained by the victims of the crimes at issue was not "particularly great," as that term is contemplated by Tenn. Code Ann. § 40-35-114(6). Therefore, the "amount of damage" factor is not applicable.

In State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994), this court ruled that the multiple victims factor, Tenn. Code Ann. § 40-35-114(3), is not applicable when convictions are entered for each victim, as in this case. Furthermore, trial courts may not infer dual ownership of property. In State v. Shannon Renee Davis, No. 03C01-9311-CR-00387 (Tenn. Crim. App., at

Knoxville, Nov. 14, 1995), aff'd 940 S.W.2d 558 (Tenn. 1997), the defendant damaged the home and automobile of a co-worker. While acknowledging that "it would probably be reasonable for this Court to infer from the record that either [the husband or the wife] had a property interest in the house or automobile," this court refused "to infer dual ownership based on this record." Id. at 8. Moreover, this court declined "to broaden the application of who is a ‹victim' by treading down a path of supposition and speculation." Id. In summary, Tenn. Code Ann. § 40-35-114(3) may not be applied as an enhancement factor.

The trial court properly applied Tenn. Code Ann. § 40-35-114(1), that the defendant has a previous history of criminal behavior in addition to that necessary to establish the range, and Tenn. Code Ann. § 40-35-114(7), that the offense was committed to gratify the defendant's desire for pleasure or excitement. The proof establishes that these factors may be applied to the theft and the burglary convictions.

The trial court properly applied two mitigating factors: Tenn. Code Ann. § 40-35-113(1), that the defendant's conduct did not cause or threaten serious bodily injury, and Tenn. Code Ann. § 40-35-113(10), that the defendant assisted the authorities in recovering stolen property. As pointed out by the trial court, the defendant deserves credit for seeking help and for assisting the police in "clearing all of the cases that he had committed."

Because two of the enhancement factors were erroneously applied, the remaining two enhancement factors must be weighed against the two mitigating factors. In our view, equal weight should be given to each. Thus, the defendant should receive the minimum one-year sentence within the range. The burglary sentences and the sentence for theft of property over $500.00 are modified from two years to one year. The sentences for each of the misdemeanor thefts shall be 11 months and 29 days.

II

Next, the defendant contends that the trial court erred by imposing consecutive sentences. While the state concedes that the trial court erroneously classified the defendant as a "dangerous mentally abnormal person" for consecutive sentencing purposes, it submits that consecutive sentences are appropriate for other reasons.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and
> . . . the aggregate maximum of consecutive terms must be reasonably

related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation;
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); See also State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In imposing consecutive sentences, the trial judge made the following statement:

I find under Tenn. Code Ann. § 40-35-115 that the defendant is a dangerously mentally abnormal person so declared by a competent psychiatrist who concludes, as a result of an investigation prior to sentencing, that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior . . . with heedless indifference to consequences, and I find that is true based on the report by his counselor, so he is a dangerous offender, which would justify the consecutive sentencing.

The trial court's reliance upon Tenn. Code Ann. § 40-35-115(b)(3) ("dangerous mentally abnormal person") was erroneous. The basis for the finding was a report submitted by psychologist H. James Meginley. Tenn. Code Ann. § 40-35-115(b)(3), however, provides that a defendant must be declared a "dangerous mentally abnormal person" by a "competent psychiatrist." Tenn. Code Ann. § 40-35-115(b)(3) (emphasis added). See also State v. Hallock, 875 S.W.2d 285 (Tenn. Crim. App. 1993). The state concedes that the trial court's basis for consecutive sentencing was erroneous but argues that consecutive sentences are proper because the defendant has an extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2).

A defendant may have a good record and still qualify for consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(2). So long as his present convictions indicate extensive criminal activity, consecutive sentencing may be appropriate. Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). A limitation is that a consecutive sentence may not be imposed unless it is necessary in order to protect the public from the defendant's criminal conduct.

The defendant pled guilty to 19 counts of burglary, one count of theft over $500, and one count of theft under $500.00. A total of 22 crimes qualifies as a considerable amount of criminal activity. Moreover, the defendant was responsible for at least 65 thefts. While the defendant is employed, married, and taking steps through therapy to address his problems, it is our view that the trial court was warranted in concluding that the defendant's criminal behavior indicates a risk to the public.

The defendant contends that the trial court improperly considered a sexual battery case which was pending at the time of sentencing, but was subsequently dismissed, in its determination that consecutive sentences were necessary to protect the public. The record demonstrates otherwise. The trial court stated as follows:

Now I don't know whether he's guilty or not of sexual battery involving his then 17-year-old stepdaughter . . . but that is going one

-8-

> step further if he actually is guilty of that . . . . I don't know his guilt or innocence to that so I'm not considering whether or not he's guilty of sexual battery, because those cases are still pending and he's presumed to be innocent in those two cases.

The trial court concluded that the defendant was "a real threat" to the public and that the only improvements in his attitude stemmed from his incarceration. It determined that "society [would be] better protected" by the imposition of consecutive sentences.

In our view, consecutive sentences are necessary to protect the public. The defendant committed a series of burglaries and thefts over a period of time in excess of two years. He committed the offenses while receiving psychological counseling. The intrusive conduct of the defendant poses a risk to the public. Efforts at rehabilitation through counseling have been unsuccessful. Consecutive sentences are appropriate based upon the defendant's extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2).

"The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4). Because the defendant has an impressive work and educational history, because he was willing to assist the authorities in the resolution of several pending criminal investigations, and due to his strong family support, confinement for a period of six years is warranted. That, in our view, is the least severe sentence possible under these circumstances. The sentence, as modified, is long enough to avoid depreciating the seriousness of the offenses. In summary, the defendant shall serve six of his nineteen one-year sentences for burglary consecutively. Because the remainder of his sentences will be served concurrently, the effective sentence is six years.

### III

Next, the defendant argues that the trial court erred by denying an alternative sentence. He claims that he was a suitable candidate for sentencing under the Community Corrections Act of 1985. The state disagrees.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence for each conviction is eight years or less. Tenn. Code Ann. §§ 40-35-303(a), (b). Among the factors applicable to an application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). A sentence of split confinement involves the grant of probation after the partial service of a sentence. Tenn. Code Ann. § 40-35-306. It may include a jail or workhouse sentence of up to one year with the probationary term to extend for any period thereafter up to the statutory maximum for the offense. Id.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

The defendant is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). He is not, however, entitled to a Community Corrections sentence as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987).

> In denying an alternative sentence, the trial court stated as follows:
> I do find he is a . . . real threat. I think the improvement in his attitude has been because of his incarceration. I've noticed the change only since he's been incarcerated. I believe that . . . in this case that he is a dangerous offender and should serve active time, so I will order the 8-year sentence to be served in the Department of Corrections.

The defendant began stealing purses in October of 1994. While he had received psychological counseling since December of 1993, he continued to steal women's purses until his

arrest in June of 1996. Moreover, the defendant's psychologist believed that the defendant had not made "significant progress on an outpatient basis" and was merely "going through the motions, giving outward appearances of compliance, hoping that would be enough." The psychologist also indicated that the defendant routinely missed or arrived late to his counseling sessions. Thus, it is fair to conclude that his attempts at counseling had been unsuccessful and that confinement was necessary to protect society. That, in our view, is a reasonable basis for the denial of an alternative sentence.

Accordingly, the convictions are affirmed and the sentences modified to an effective term of six years.